UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUZANNE A. SWENSON,<br><br>                Plaintiff,<br><br>    v.<br><br>COUNTY OF KOOTENAI, KOOTENAI COUNTY SHERIFF'S OFFICE, KOOTENAI COUNTY SHERIFF ROCKY WATSON, DEPUTY SHAWN LINDBLOM, KOOTENAI COUNTY PROSECUTOR BARRY McHUGH, DEPUTY PROSECUTOR JIM REIERSON, DEPUTY PROSECUTOR JOSHUA STUDOR, DEPUTY PROSECUTOR KEN BROOKS; DEPUTY JOHN DOES, *et al.*, JUDGE BARRY E. WATSON, MAGISTRATE SCOTT WAYMAN, DETECTIVE JASON AUSTIN, and DEPUTY JONATHAN BRANDEL,<br><br>                Defendants. | Case No. 2:13-cv-00026-EJL-REB<br><br><br>**MEMORANDUM DECISION AND ORDER RE:**<br>**Docket Nos: 52, 53 59, 74, 90, 98 and 104**<br><br><br><br>**REPORT AND RECOMMENDATION RE:**<br>**Docket Nos: 49, 62, and 70** |

## PENDING MOTIONS

Currently pending before the Court are the following motions:

Docket 49 – Defendants Magistrate Scott Wayman and Magistrate Bruce E. Watson's Motion to Dismiss and Stay Discovery;
Docket 52 – Defendants' Motion to Compel Plaintiff to Comply with Federal and Local Rules of Civil Procedure;
Docket 53 – Plaintiff Suzanne A. Swenson's Motion to Strike Impertinent, Immaterial, Scandalous Remarks, and Insufficient Defenses from Defendants Motion to Dismiss;
Docket 59 – Defendants' Motion to Compel Discovery;
Docket 62 – Plaintiff's Motion for Leave to Amend Complaint;
Docket 70 – Defendants' Kootenai County, Kootenai County Sheriff's Office, Watson, Lindblom, McHugh, Reierson, Studor, Brooks, Austin and Brandel Motion for Summary

MEM. DECISION AND ORDER /  REPORT AND RECOMMENDATION - 1

Judgment;

        Docket 74 – Plaintiff's Motion for Entry of Default;
        Docket 90 – Plaintiff's Motion to Strike;
        Docket 98 – Plaintiff's Motion to Compel; and
        Docket 104 – Plaintiff's Motion for Sanctions.

Having fully reviewed the record as to each such motion, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay and because the Court finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided without oral argument.

## THRESHOLD ISSUES REGARDING THE LEGAL SUFFICIENCY OF AFFIDAVITS SUBMITTED BY DEFENDANTS IN SUPPORT OF PENDING DISPOSITIVE MOTIONS.

Plaintiff challenges the legal sufficiency of the Supplemental Affidavit of Shawn Lindblom in her Motion to Strike (Dkt. 90), arguing that the affidavit (Dkt. 88-1) is not in proper form. The Court has examined the Supplemental Affidavit of Shawn Lindblom and other of the affidavits relied upon by Defendants, and has concluded that several of the affidavits filed by the Defendants are not in proper form.[1] Specifically, these affidavits do not contain the essential "jurat" language required by Idaho law which confirms that the testimony in the affidavit has been sworn or affirmed under oath. *See* I.C. § 51-109. Instead, the affidavits carry an "acknowledgment" form, which simply is a statement made by the notary public that the person signing the affidavit is, in fact, who he or she says they are.

There is an alternative method of presenting sworn testimony for Rule 56 purposes in federal court, in the form of a "declaration, provided that the declaration meets the requirements

---

[1] These affidavits include: Affidavit of Shawn Lindblom (Dkt. 70-4); Affidavit of Andy Deak (Dkt. 70-5); Affidavit of Jarred Peterson (Dkt. 70-6); and the Supplemental Affidavit of Shawn Lindblom (Dkt. 88-1).

of 28 U.S.C. § 1746.  If the flawed affidavits had carried the language prescribed by 28 U.S.C. § 1746, the Court might be able to consider them sufficient under the statute dealing with declarations, but they do not have the required language.

This error is likely a scrivener's error, rather than any effort to present testimony in an unsworn form as if it were sworn.  However, the Court will not presume the fact of such a scrivener's error, especially when it comes to the critical role of sworn testimony in support of a motion for summary judgment.  However, in the interest of considering the motion and the related issues on their merits, the Court will allow Defendants <u>seven (7) days from the date of this Order</u> in which to file substituted affidavits in the proper form, if Defendants choose to do so. The Court would take the same action if the shoe were on the other foot – in other words, if Plaintiff had submitted an affidavit with the same infirmity, the Court would allow for the same opportunity to correct the infirmity.  Accordingly, the Court's ruling on the motion for summary judgment is conditional and not effective until the affidavits are filed in proper form.

The substituted affidavits are not to differ in any way from the content of the original affidavits, other than to correct the format so that they are executed in proper form.  If any of these affidavits are *not* corrected and resubmitted to the Court, Defendants shall make this aware to the Court.  As a result, for these purposes, the Court will deny Swenson's motion to strike, without prejudice to her raising the motion again if the substituted affidavits carry some continuing or additional structural infirmity that Swenson would contend should preclude the Court's consideration of the same.

# REPORT

## BACKGROUND

Plaintiff Suzanne A. Swenson ("Swenson") filed a Complaint (Dkt. 1) on January 16, 2013 and an Amendment to Complaint (Dkt. 9) on January 29, 2013 against Kootenai County, Kootenai County Sheriff's Office, Kootenai County Sheriff Rocky Watson, Deputy Shawn Lindblom, Kootenai County Prosecutor Barry McHugh, Deputy Prosecutor Jim Reierson, Deputy Prosecutor Joshua Studor, Deputy Prosecutor Ken Brooks, Deputy John Doe, Judge Barry E. Watson, Magistrate Scott Wayman, Detective Jason Austin and Deputy Jonathan Brandel.

Swenson alleges that she was wrongfully arrested in Kootenai County, Idaho for felony possession of controlled substances and misdemeanor battery, that she was mistreated by the Kootenai County Sheriff's Department in violation of her civil rights under the Fourth and Eighth Amendments, and that she was maliciously prosecuted.

## DISCUSSION

### I. Motion to Dismiss of Defendant Judges Wayman and Watson (Dkt. 49)

Swenson alleges that state Magistrate Judge Wayman "signed a criminal complaint that was deficient on its face, lacking an injured party or damages," violating her Fourth and Fifth Amendment rights. Amend. Comp. ¶¶ 127, 162. She alleges that state Magistrate Judge Watson "refused to look at exculpatory evidence . . . [thereby] prolonging [her] detainment" and in doing so violated her Fourth and Fifth Amendment rights. *Id.* at ¶¶ 129, 145.[2] Swenson also

---

[2] There are no additional allegations or claims brought against Judge Wayman and Judge Watson in Swenson's proposed Second Amended Complaint (Dkt. 62-2).

alleges that when a judge acts "in any case in which he does not have subject matter jurisdiction, he is acting unlawfully" and that Judge Watson "lost any subject matter jurisdiction" when he failed to look at the exculpatory evidence. *Id.* at ¶¶ 143, 146. She seeks damages in the amount of $500,000 against both Judge Wayman and Judge Watson. *Id.*, p. 19.

Judge Wayman and Judge Watson move to dismiss the claims on the grounds of absolute immunity, statutory immunity, and failure to comply with the Idaho Tort Claims Act.

**1.      Standard**

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir.2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555 (2007).  In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*  In sum, dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F .3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**2.      Absolute Immunity**

A judge has absolute judicial immunity for acts performed in the exercise of his judicial

functions.  *Stump v. Sparkman*, 435 U.S. 349 (1978).  Judicial officers are also entitled to

absolute immunity from claims for injunctive relief  "unless a declaratory decree was violated or

declaratory relief was unavailable."  42 U.S.C. § 1983.  In other words, if declaratory relief in an

action is available, absolute judicial immunity bars any claims for injunctive relief in that action.

*Kampfer v. Scullin*, 989 F.Supp. 194, 201 (D.N.Y. 1997).[3]

       To determine whether an act is judicial in nature so that immunity would apply, a court

looks to "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge,

and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial

capacity."  *Sparkman*, 435 U.S. at 362.  If it is determined that a judge was acting in his judicial

capacity, absolute immunity applies, even if "erroneous the act may have been, and however

injurious . . . its consequences . . . may have proved to the plaintiff."  *Ashelman v. Pope*, 793

F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted).  For example,  judicial immunity is

not lost by allegations that a judge conspired with one party to rule against another party.  "[A]

conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding,

while clearly improper, nevertheless does not pierce the immunity extended to judges and

prosecutors." *Id.* at 1078.  Absolute immunity for judicial officers "is justified and defined *by the*

---

[3] As described by the Third Circuit, the 1996 amendment adding the limiting language about declaratory relief was not intended to expressly authorize suits for declaratory relief against judges:

> Instead, it implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate. The language is not an express authorization of declaratory relief, but simply a recognition of its availability or unavailability, depending on the circumstances, which the statute does not delineate.

*Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000).

MEM. DECISION AND ORDER /  REPORT AND RECOMMENDATION - 6

*functions it protects and serves*, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). (Emphasis added.)

There are two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that is not "judicial" in nature. *Sparkman*, 435 U.S. at 360. For example, a judge's use of physical force to evict a person from the courtroom is a nonjudicial act not covered by absolute immunity. *See Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974).

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Sparkman*, 435 U.S. at 356 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly. . . . A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id*.

Swenson contends that Judge Wayman signed a criminal complaint or warrant that was "deficient on its face," that Judge Watson "refused to look at exculpatory evidence," and that doing so violated her Fourth and Fifth Amendment rights. Judges Watson and Wayman are entitled to judicial immunity against her complaints, for the reason that they were each performing acts that were "judicial" in nature. *Sparkman*, 435 U.S. at 360. Judge Wayman is alleged to have signed a criminal complaint. Swenson appeared in front of Judge Watson in court on an initial appearance. As Idaho state court magistrate judges, the following criminal and quasi-criminal proceedings are assigned to them under Idaho Code § 1-2208(3):

(a)     Misdemeanor and quasi-criminal actions;
(b)     Proceedings to prevent the commission of crimes;
(c)     Proceedings pertaining to warrants for arrest or for searches and seizures; and
(d)     Proceedings for preliminary examination to determine probable cause,

commitment prior to trial or the release on bail of persons charged with criminal offenses.

Swenson argues in her response (Dkt. 54-1) that Judge Wayman and Judge Watson are not entitled to absolute immunity because by "enforcing statutes and codes" they were not functioning in a judicial capacity. She is mistaken. To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Sparkman*, 435 U.S. at 362. Both Judge Wayman and Judge Watson's acts were judicial in nature. Judge Wayman signed the criminal complaint and Judge Watson presided over Swenson's first appearance in court. Both of these fall within the realm of judicial duties specifically delineated in I.C. § 1-2208(3).

Second, Judge Wayman had jurisdiction to sign the criminal complaint pursuant to I.C. §§ 1-705, 1-2208. Under Section 1-2208(3)(c), magistrate judges preside over proceedings pertaining to warrants for arrest or for searches and seizures. In her complaint, it appears that Swenson attempts to argue that Judge Wayman did not have jurisdiction because the criminal complaint was deficient on its face. There is no legal authority for this proposition. *See Sparkman*, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.") Judge Wayman clearly had jurisdiction to sign the criminal complaint.

The same analysis applies to the allegations against Judge Watson. Section 1-2208(3)(d) empowers magistrate judges to preside over proceedings for preliminary examination and to determine release on bail prior to trial, which is exactly what Judge Watson did. The difference between acting in the absence of jurisdiction and acting in excess of authority is made clear in

the following example: "if a probate judge with jurisdiction over only wills and estates should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune." *Sparkman*, 435 U.S. at 357 (internal citation omitted). Swenson essentially alleges the latter scenario, and by the nature of such allegations there can be no doubt but that Judge Watson is entitled to absolute immunity.

Based upon the law and the facts presented in Swenson's Complaint and Amendment to the Complaint, Judges Wayman and Watson are entitled to absolute judicial immunity and the claims against them should be dismissed. Because the Court has found that Judges Wayman and Watson are entitled to absolute immunity, the Court will not address their alternative arguments seeking dismissal of such claims for failure to comply with requirements of the Idaho Tort Claims Act.

## II. Swenson's Motion to Strike Impertinent, Immaterial, Scandalous Remarks and Insufficient Defenses from Defendant's Motion to Dismiss (Dkt. 53)

Swenson moves, pursuant to Fed. R. Civ. P. 12(f), to strike Defendants' motion to dismiss "in whole as an insufficient defense because it only makes vague claims and conclusions without bringing any kind of proof on the record where they were doing anything other than enforcing statutes as administrators where there is no immunity." Memorandum in Support of Motion to Strike (Dkt. 53-1), p. 1. Swenson then repeats the same arguments made in opposition to the Motion to Dismiss filed by Judges Wayman and Watson. (Dkt. 54-1) The Court has addressed the merits of these arguments, to the extent necessary, in the section above.

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Judges Wayman and Watson argue that Swenson's motion fails at its threshold, because she directs her motion at a *motion*, not a *pleading*. Rule 12(f), they contend, only applies to striking defenses from a *pleading* and would not be applicable to their motion to dismiss.

Because Swenson is proceeding pro se, her pleadings and motions will be construed liberally. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The leeway allowed her thereby does not go so far, however, as to remodel the particular parameters of Rule 12(f) and the Court concludes that her Rule 12(f) motion is not properly made in this context. However, even if Rule 12(f) could properly be used to challenge an opposing party's dispositive motion papers, the result is no different. Swenson repeats the arguments made in her opposition to the motion to dismiss and her arguments in that regard are not persuasive. A review of those arguments in a Rule 12(f) context does not change the Court's view of their inadequacy, and does not change the Court's decision that Judge Wayman and Judge Watson are entitled to absolute judicial immunity. The Court has duly considered Swenson's arguments. Her motion to strike is denied.

### III. Kootenai County Defendant's Motion for Summary Judgment (Dkt. 70)

Defendants Kootenai County, Kootenai County Sheriff's Office, Kootenai County Sheriff Rocky Watson, Deputy Shawn Lindblom, Kootenai County Prosecutor Barry McHugh, Deputy Prosecutor Jim Reierson, Deputy Prosecutor Joshua Studor, Deputy Prosecutor Ken Brooks, Detective Jason Austin, and Deputy Jonathan Brandel (collectively, the "County Defendants") move for summary judgment. The various particulars of that motion are discussed below, with the Court first considering the facts and claims attendant to the incidents leading up to and

including Swenson's arrest.  Next, the Court discusses the circumstances of Swenson's

incarceration following her arrest and the prosecution of the criminal charges against her.

1.       **Summary Judgment Standard**

One principal purpose of summary judgment "is to isolate and dispose of factually

unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a

disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually

insufficient claims or defenses [can] be isolated and prevented from going to trial with the

attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must

be viewed in a light most favorable to the non-moving party and the Court must not make

credibility findings.  *See id*. at 255.  Direct testimony of the non-movant must be believed,

however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other

hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this

burden, the moving party need not introduce any affirmative evidence (such as affidavits or

deposition excerpts) but may simply point out the absence of evidence to support the nonmoving

party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

## 2.    Facts Relating to Swenson's Wrongful Arrest and Excessive Force Claims

The following facts, unless otherwise noted, are taken from Lindblom's affidavit (Dkt. 70-4) and the Kootenai County Defendant's statement of facts (Dkt. 70-2). On January 19, 2001, Deputy Lindblom was dispatched to 8827 N. Government Way, Coeur d'Alene, Idaho to the "Caring Physicians Medical Clinic" for a reported battery. When Lindblom arrived, he spoke with Charlotte Whitfield ("Whitfield"), an employee at the clinic. Lindblom observed Whitfield to be visibly shaken and upset, her hands were shaking and it appeared as though she had been crying. Whitfield said that on the previous day, Swenson had come to the clinic with Mavis Boman,[4] a patient of Dr. Baker's at the clinic. After the appointment, Swenson requested some medical records of Boman, including an EKG print-out. Whitfield told Swenson that the records

---

[4] Swenson was a caretaker for Mr. Boman.

could only be released to the patient and would be available for pick up the next day.  The next

day (January 19, 2011) Swenson returned to pick up the medical documents, but Mr. Boman did

not come into the clinic. Whitfield brought the documents to give to him in the parking lot.

While she was doing so, Swenson became agitated and confronted Whitfield with strange

accusations.[5]  As a result, Whitfield became reluctant to turn over the documents, and started to

go back to the clinic to get Dr. Baker to assist her.  At that time, Swenson grabbed Whitfield's

wrist and ordered Whitfield to give her the documents.  Whitfield said that she tried to pull away

and then Swenson grabbed Whitfield by the hair and right shoulder.  Whitfield was then able to

pull away and ran into the office.  She told Dr. Baker what had happened and then called the

Sheriff's Department to report the incident.  Dr. Baker went out to the parking lot to obtain the

license plate number of a blue Buick, which was later determined to be Swenson's car.  Affidavit

of Shawn Lindblom (Dkt. 70-4), ¶¶ 7-13, Ex. A.

When Lindblom arrived at the clinic, Whitfield showed him a ziploc container with a

dark lock of hair and informed him that the hair had been pulled from her head during the

altercation with Swenson.  Lindblom took photographs of Whitfield.  A coworker of Whitfield's

showed him a photograph of Whitfield's back right shoulder that was taken immediately after

the incident and showed a slight redness, approximately four inches in length on her shoulder.

Whitfield filled out a witness statement and said she wanted to pursue battery charges against

Swenson.  Lindblom Aff., ¶¶ 14-15.

Lindblom telephoned Swenson to find out where she was. Swenson said she was with

---

[5]  By way of example, Whitfield said that Swenson told her that: "You need to come
clean about Dr. Baker or you will go down with him."  Lindblom Aff., Ex. A.

Mr. Boman at 914 W. Ironwood Drive in Coeur d'Alene. Lindblom went to that location with Deputy Toal. Lindblom questioned Swenson about the incident. Swenson was very vague in her responses. Swenson admitted that when Whitfield attempted to return to the office without handing over Mr. Boman's EKG printout, Swenson grabbed the paperwork and said she "may have bumped" Whitfield in the process. Lindblom Aff., ¶¶ 17-19.

Lindblom advised Swenson that she had violated Idaho Code § 18-903, advised her of her Miranda rights and placed her under arrest for battery. He handcuffed Swenson with her hands behind her back. Lindblom checked the handcuffs for tightness by placing his pinky finger between her wrist and the handcuffs. Swenson complained that the handcuffs were uncomfortable and Lindblom re-checked them and was still able to place his pinky finger between her wrist and the handcuffs. Lindblom Aff., ¶¶ 20-21.

After Swenson was in custody, Lindblom searched Swenson's purse and found three small plastic pill containers that contained several types of medications mixed together. Lindblom asked Swenson about any prescription medications she may have in her possession and she stated she took only Hydrocodone. The pill containers included these medications: Codiene, Oxycodone, Hydrocodone, Butalbital, Clonazapam, Hydroxyzine, Diazepam, and five over the counter Banophen pills. When Lindblom questioned her about the various types of medications found, Swenson stated she had prescriptions for the medications but could not provide them. Lindblom Aff. ¶¶ 23-25.

Lindblom then charged Swenson with multiple counts of violating Idaho Code § 37-2732(c)(1) (Possession of Schedule II Prescription Medication); § 37-2732(c)(3) (Possession of Schedule IV Prescription Medication); and § 54-1732(c) (Possession of a Medication without a

Prescription).  Lindblom Aff. ¶ 26.

Lindblom took Swenson to the Kootenai County Public Safety building where she was booked for the charge of battery and the charges of illegal possession of prescription medication. The pills and pill containers were seized and booked into evidence.  Lindblom Aff. ¶ 27.

Swenson filed an affidavit (Dkt. 1-1) and statement of facts (Dkt. 83-5) in response to the motion for summary judgment.  Swenson claims that once she was in custody and Lindblom was searching her purse, she told him to look in her car for the medical records that would explain the medications she had in her purse.  Swenson Aff. of Facts (Dkt. 1-1), ¶¶ 178-182.  When she attempted to explain her medical conditions and the medications, Swenson claims Lindblom "mocked [her] with sarcastic comments."  *Id*. at ¶ 177.  Swenson contends that the handcuffs were placed on her in an aggressive manner with the right handcuff cinched too tightly.  *Id*. at ¶ 147.  Swenson asked Lindblom to loosen the handcuffs several times, but he never did and instead stated they "weren't supposed to be comfortable."  *Id*. at ¶¶ 167, 193, 208.  Swenson was experiencing extreme panic and was fearful for her heart condition, she asked for help from another officer who gave her a drink from her electrolyte water.  *Id*. at ¶ 199.  Swenson alleges she suffered nerve damage from the overly tight handcuffs.

### A.       Swenson's Wrongful Arrest Claim Should be Dismissed

The Fourth Amendment prohibits unreasonable seizures.  Arrests made without a warrant are unreasonable, and therefore violate the Fourth Amendment, if conducted without probable cause.  *See Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1996) ("where probable cause does exist, civil rights are not violated by an arrest even though innocence may subsequently be established.")  In other words, probable cause is a defense to claims of unlawful arrests.  *See*

*Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) ("Defendants are entitled to qualified immunity for [Plaintiff's] arrest if a reasonable officer could have believed that probable cause existed to [make the] arrest.")

"Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Brooks v. City of Seattle*, 599 F.3d 1018, 1023 (9th Cir. 2010) (quoting *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009)). Lindblom was dispatched to Caring Physicians Medical Clinic on a call of battery. Upon arriving there, he witnessed a visibly shaken and upset victim, Whitfield. Whitfield informed Lindblom that Swenson had grabbed her wrist, pulled her hair, and grabbed her right shoulder. Whitfield showed him a ziploc container of her hair that she claimed was pulled out by Swenson. Lindblom noted that the hair matched Whitfield's. Lindblom was also shown a photograph taken by Whitfield's coworker immediately after the incident showing a red mark on Whitfield's back. Under these circumstances, Lindblom could reasonably believe that Swenson had committed a battery under Idaho law. *See* Idaho Code § 18-903 (defining battery as the actual, intentional and unlawful touching or striking of another person against the will of another). Thus, probable cause existed and the arrest for battery was reasonable.

As to the other charges, when Lindblom asked Swenson if she had any prescription medication in her possession, she stated she took Hydrocodone and Valium. When Lindblom searched Swenson's purse after her arrest for battery, he located several prescription medications in unmarked pill containers. Swenson stated she had prescriptions for the medications but could not provide them. Under these circumstances, Lindblom reasonably believed that Swenson had

violated Idaho law with regard to possession of controlled substances.  *See* Idaho Code § 37-2732(c) ("It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice); § 54-1732(c) ("The possession or use of a legend drug or a precursor by any person unless such person obtains such drug on the prescription or drug order of a practitioner.") Thus, probable cause existed and the arrest for these violations was reasonable.[6]

> **B.    There are Genuine Issues of Material Facts as to Swenson's Excessive Force Claim, and it Should Not be Dismissed.**

A law enforcement officer is entitled to employ "some degree of physical coercion or threat thereof" in making an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The amount of force, however, must be reasonable.  *Id*.  Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Id*. at 388.  "This inquiry 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Brooks v. City of Seattle*,

---

[6] Swenson also alleges a violation of the Fifth Amendment by Lindblom when he arrested her.  Compl. ¶¶ 112, 114.  The Ninth Circuit Court of Appeals has clarified that the "Fifth Amendment prohibits the *federal* government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process *by the several States*."  *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir.2005) (emphasis added).  Therefore, the Court construes this as a due process claim under the Fourteenth Amendment rather than the Fifth Amendment.  The Court is mindful that the Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment.  *Graham v. Connor*,  490 U.S. 386, 395 (1989).  Under the *Graham* principle, Swenson's claim is more appropriately construed as a Fourth Amendment claim than a Fourteenth Amendment due process claim.  Accordingly, the analysis in this section is applicable to Swenson's Fifth Amendment claim.

599 F.3d 1018, 1025 (9th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In determining whether law enforcement officers used excessive and, therefore, constitutionally unreasonable force in the course of an arrest, the Ninth Circuit has emphasized a three-step analysis. *Miller v. Clark County*, 340 F.3d 959 (9th Cir. 2003). First, the court examines the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted. *Id*. at 964. Second, the court assesses "the importance of the government interests at stake" by evaluating the factors set forth in *Graham v. Connor*, 490 U.S. 386 (1989).[7] Third, the Court must consider the totality of the circumstances and weigh the gravity of the intrusion against the government's interest to determine whether the force employed was constitutionally reasonable. *Miller*, 340 F.3d at 964. *Accord*, *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (the "inquiry is not limited to the specific *Graham* factors, . . . [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'") (quoting *Graham*, 490 U.S. at 396).

Summary judgment is appropriate upon an excessive force claim if the court "concludes after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). In *Graham*, the Supreme Court made clear that the reasonableness of the force used must be judged from the perspective of a reasonable officer on the scene, making allowances for the split-second judgments officers are required to make in "tense, uncertain and rapidly-evolving"

---

[7] These factors include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. 386, 396.

situations.  490 U.S. at 396-97.  In other words, the officer's actions are to be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.  Officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct.  *Brooks*, 599 F.3d at 1025. "Determination of that reasonable range requires consideration of the totality of the circumstances." *Id*.

Swenson alleges that, during the course of her arrest, Lindblom used overly tight handcuffs resulting in nerve damage to her wrists and that the use of such force was unreasonable under the Fourth Amendment.[8]  She does not challenge the *use* of handcuffs but rather the manner in which they were used on her.

The Ninth Circuit has recognized that "tight handcuffing can constitute excessive force." *Lalonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000).  Liability in such instances considers such things as whether a request is made to loosen the handcuffs, whether the officer is aware that the handcuffs are too tight, and whether there is evidence of injury from the

---

[8]  Swenson also claims the tightness of the handcuffs violated her Eighth Amendment right to be free from cruel and unusual punishment.  Compl. ¶ 115.  However, the Eighth Amendment's protections do not attach until after conviction.  *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977) ("the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."); *see also Pierce v. Multnomah County*, 76 F.3d 1032 (9th Cir. 1996) ("the Eighth Amendment's prohibition against malicious or sadistic use of force . . . does not apply until after conviction and sentence.") (citation and quotation marks omitted).  Because the allegations of excessive force occurred prior to conviction, the validity of Swenson's claim is considered under the Fourth Amendment's prohibition against unreasonable seizures of the person.  *Graham*, 490 U.S. at 394.  "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id*.  Accordingly, Swenson's claim under the Eighth Amendment against Lindblom is dismissed.

handcuffs.  *See Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002).

In this case, Swenson was charged with a relatively serious crime, but she did not pose an immediate threat nor was she actively resisting arrest.  There is no objective medical evidence in the record of injury to Swenson's wrists from the handcuffing.[9]  However, there is a dispute around the complaints Swenson made about the handcuffs.  According to Swenson, she made multiple complaints to Lindblom that the handcuffs were too tight and hurt her.  She says Lindblom did nothing to address her complaints.  According to Lindblom, Swenson complained once that the handcuffs were too tight and he rechecked them and found them to be acceptable, as there was room for him to place his pinky finger between Swenson's wrists and the handcuffs.

The Ninth Circuit has been reluctant to approve the use of summary judgment in cases involving allegations of police misconduct in handcuffing.  *See Lalonde*, 204 F.3d at 953; *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993); *Hansen v. Black*, 885 F.2d 692 (9th Cir. 1989).  A common thread in these decisions is the question of whether the police officer was told that the handcuffs were being applied too tightly.  Lindblom says the handcuffs were not too tight and Swenson only complained once, after which he rechecked the handcuffs.  Swenson says that they were too tight, that she made several requests that Lindblom loosen them, and he did not do so.  The inferences from such facts must be drawn for the benefit of Swenson, and in the absence of compelling evidence that simply makes Swenson's claims unbelievable, summary judgment is not warranted on this claim on the particular facts described above.

However, Lindblom also asserts he is entitled to qualified immunity on the excessive

---

[9]  Swenson states at different portions in her filings that there is evidence in the record of injury to her wrists but does not cite to where it is located in the record nor can the Court find any such evidence on its own review of the record.

force claim.  A qualified immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff establish a violation of a constitutional right, and (2) whether that right was clearly established given the state of the law at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Lindblom argues that an officer is entitled to qualified immunity, even if he was mistaken in his belief that his conduct was lawful, so long as that believe was reasonable.  *See Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003).  This may well be the case but when there are facts in dispute that are material to the question of an officer's belief in the reasonableness of his conduct, as there are here with regard to Lindblom's awareness of Swenson's complaints, there are questions that need to be answered before the qualified immunity analysis can be completed, particularly when the claim is excessive force in the use of handcuffs.  Accordingly, summary judgment on qualified immunity grounds should be denied.  *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).

3.      **The Circumstances of Swenson's Time in Custody, and of her Prosecution**

Swenson arrived at the Kootenai County Public Safety Building at approximately 9 p.m., where she was booked on the charges that Lindblom had identified. She was interviewed during the booking process, and answered "yes" when asked if she had a drug dependency issue.  She also said she had numerous medical problems and that without her medication, she would go through withdrawals.  Based on that information, she was put on a medical watch.  Affidavit of Andy Deak (Dkt. 70-5), Exs. A & C.

At approximately 1:30 a.m. on January 20, 2011, Swenson complained of chest pain to the staff at the Kootenai County Jail.  Paramedics were called.  After they evaluated Swenson,

she was transported to the Kootenai County Medical Center ("KMC"). Deputy Jarred Peterson was dispatched to follow the ambulance to the hospital. *Id.*, Ex. C.

Swenson received treatment and was released from KMC. She returned to the Kootenai County Jail on the morning of January 20, 2011 at around 7:30 a.m. She was then released from custody, on bond, at approximately 5 p.m. that same day. While she was in custody that day, Swenson was on medical watch and observed by staff every fifteen minutes. She was given medication around 3:30 p.m. *Id.*, Exs. D, E, F.

Swenson raised claims based on events of that day in which she was in custody. She alleges that she was stripped and chained naked to a gurney after she arrived at KMC, and during that time an unnamed deputy "leer[ed] at her naked body." She further alleges that she was released from KMC to the custody of Deputy Peterson,[10] and that he left her to stand "in snow in freezing weather, during a heavy wet snowfall, with only one thin layer of Kootenai County prisoner clothes and broken sandals on without socks" for over five minutes and then she had to walk to the Deputy's car through three or four inches of snow. Compl. ¶¶ 40-45.

On January 20, 2011, a Criminal Complaint, brought by Deputy Austin and signed by Judge Wayman, was filed against Swenson in Kootenai County state court alleging one count of unlawful possession of a controlled substance. Amend. Compl., Ex. S (Dkt. 9-1). On August 5, 2011, the charges and case were dismissed by motion of the prosecutor. Erbland Affidavit (Dkt. 70-3), Exs. B, C.

Swenson alleges that she spoke with Deputy Brandel about the injuries caused by Lindblom and he stated that Lindblom acted within departmental policies and did not advise her

---

[10] In the Complaint, Peterson is identified as "Doe." Swenson later identified this person to be Jarred Peterson. *See* Proposed Second Amended Complaint (Dkt. 62-2) ¶¶ 1-13.

of any formal complaint procedures that she could pursue.  Amend. Compl. ¶¶ 131-134.

**A.      Swenson's Malicious Prosecution Claim Should be Dismissed**

Swenson makes various allegations against the individual Defendants (Prosecutor McHugh, Prosecutor Reierson, Prosecutor Studor, Prosecutor Brooks, Detective Austin and Deputy Brandel[11]), including that they brought false charges, committed a "fraud upon the court," and "aid[ed] and abett[ed] violations of [her Fourth, Fifth and Eighth] amendment protections, [and] cover[ed] up the unlawful arrest."   Compl. ¶ 119; Amend. Compl. ¶¶ 161, 164.  These allegations are most sensibly construed as malicious prosecution claims, in that they stem from Swenson's contention that the charges against her were wrongfully filed or pursued, which are characteristic of a malicious prosecution claim.

A malicious prosecution claim under 42 U.S.C. § 1983 requires proof (1) "that defendants prosecuted [plaintiff] with malice," (2) "without probable cause," and (3) "that they did so for the purpose of denying equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citation omitted). "Malicious prosecution actions are not limited to suits against prosecutors but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Id.* at 1066.

The element of malice focuses upon the intent or state of mind of the party initiating the prosecution.  The element of probable cause, however, is focused upon the party's knowledge. *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030-31 (9th Cir. 2008).  Therefore, "[t]he probable cause inquiry is objective, asking whether a reasonable person would have

---

[11]  Swenson makes somewhat distinct allegations regarding Brandel; however, there is no discernable specific constitutional claim in those allegations.  Therefore, the claims against Brandel are also considered in the malicious prosecution analysis because Swenson alleges that he covered up her "unlawful arrest."  Amend. Compl. ¶ 164.

thought that the claim was legally tenable 'without regard to [her] mental state,'" while the malice inquiry focuses on "the subjective mental state of the defendant in instituting the prior action." *Id*. at 1031. (Internal citations and punctuation omitted.)

Swenson was originally arrested on one count of battery, two counts of possession of a controlled substance, and one count of unlawful possession or use of a prescription drug. (The criminal complaint lodged against her on January 20 contained only the one felony count of unlawful possession of a controlled substance.) "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Brooks v. City of Seattle*, 599 F.3d 1018, 1023 (9th Cir. 2010). Probable cause is an absolute defense to malicious prosecution. *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009). A magistrate judge found probable cause existed for the felony charge and signed the criminal complaint. Erbland Aff., Ex. A. The evidence in this record (described *infra* in regard to Swenson's unlawful arrest claim) establishes as a matter of law that information existed that would lead a man of "ordinary care and prudence to believe or entertain an honest and strong suspicion" that Swenson had committed the crimes charged. *See Herrold v. Idaho State School for the Deaf and Blind*, 732 P.2d 379, 381 (Idaho App. 1987). Where probable cause exists, it is impossible for Swenson to make a prima facie case of each of the elements of her malicious prosecution claim.

Additionally, Swenson offers no evidence of malice, other than apparently to ask the Court to infer from the fact of her excessive force claim that malice must have been part of the mix. However, she offers no evidence of anything other than the nature of her arrest and her alleged mistreatment at the jail and hospital. Malice is present when proceedings are instituted

primarily for an improper purpose.  There is no direct evidence that she has offered to demonstrate such an element, and there are no reasonable inferences that can be drawn from the facts of this record to construct such proof for her benefit as the non-movant.  Summary judgment should be entered on these claims, on behalf of each of the Defendants against whom such claims have been made.

**B.      Alternatively, Prosecutorial Immunity Should Bar Swenson's
          Claims Against McHugh, Reierson, Studor and Brooks**

Swenson includes four prosecutors in her lawsuit: McHugh, Reierson, Studor and Brooks.  They each raise the defense of prosecutorial immunity.  Although the Court has ruled that Swenson's claims of malicious prosecution should fail as a matter of law, the Court will also address the defense of prosecutorial immunity.

Prosecutors have absolute immunity for actions in the performance of an integral part of the criminal judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  These actions include initiating and pursuing a criminal prosecution,[12] preparing and filing charging documents,[13]  participating in hearings, and "making false or defamatory statements in judicial proceedings."[14]  Absolute prosecutorial immunity does extend to "the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Id.* at 1008; *see Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003).

The prosecutor defendants are entitled to the benefit of prosecutorial immunity on the facts of this case. The allegations Swenson raises stem from the individual prosecutor's actions

---

[12]   *Imbler,* at 410.

[13]  *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997).

[14]  *Burns v. Reed*, 500 U.S. 478, 490 (1991).

in charging and pursuing criminal charges against Swenson, taken in their traditional roles as prosecutors. Such actions do not arise from investigations or fabricating evidence. Swenson alleges that McHugh, Reierson and Studor failed to check the state registry to see if she had legitimate prescriptions, thereby allowing false charges to be pressed against her.  Swenson's allegations against Brooks are based upon the fact that he allegedly filed a motion in limine to suppress evidence in her criminal case, offered to drop the battery charge , and ultimately filed a dismissal of the charges against her.

 Accordingly, because these defendants were performing traditional prosecutorial functions, they are entitled to absolute immunity and the charges against them should be dismissed.

> **C.    Swenson's Claims Against Kootenai County, the Sheriff's Department, and Sheriff Watson Should be Dismissed as a Matter of Law**

Swenson alleges that Sheriff Watson violated his oath of office by supporting his deputies in their errors, acting with deliberate indifference to proper training, and not following proper procedures.  Compl. ¶ 80.  Swenson claims Kootenai County and the Sheriff's Department both have a "policy, custom, and practice" of allowing their officers to make warrantless arrests and deprive arrested individuals of their liberty without due process of law. *Id*. ¶¶ 87, 88, 93, 94.

Under *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978), "local governing bodies [. . .] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [. . .] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers."  *Id*. at 690.  Significantly, "a municipality cannot be held liable *solely* because

it employs a tortfeasor." *Id*. at 691 (emphasis in original).

### i. Municipal Custom or Policy

In order to press her claim against the County, Swenson must show evidence "that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2011) (citations omitted). The burden is on Swenson to show a relevant policy or custom on the part of the Kootenai County Defendants, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

Swenson has offered no evidence of such a policy beyond conclusory statements. She has not produced any documents, statements, records or other evidence tied to Kootenai County or its sheriff's office to allege an official policy that justified an unconstitutional use of force against Swenson.

### ii. Municipal Indifference

When, as here, a plaintiff cannot show evidence of a direct policy or a widespread custom a plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette*, 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)). Swenson must make a showing of these elements to overcome Defendants' Motion for Summary Judgment on this claim:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force

behind the constitutional violation."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 384-91 (1989) (citations omitted).  What is at issue is whether the policy exists and whether it amounts to a deliberate indifference.  The Ninth Circuit has recognized that "a plaintiff cannot prove the existence of a *municipal* policy or custom solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee."  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (emphasis in original) (citations omitted).

In this case, Swenson alleges that these Defendants "demonstrate callous indifference" to her rights and "deliberate indifference to proper training where deputies could severely affect the rights of people, . . . by lack of employee correction, . . ., [and] not following proper procedures." Compl.¶¶ 76, 80.  In *Davis*, the Ninth Circuit rejected the theory that a city could be liable for a municipal policy or custom simply on the occurrence of a single incident.  *See Davis*, 869 F.2d at 1233.  However, the Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  Swenson has not provided any evidence to support her allegations regarding the Kootenai County Defendants.  She attempts to recite allegations touching upon the elements, which is entirely appropriate, but in the context of properly opposing a motion for summary judgment filed against her, she must do more than that.  All she has set forth are conclusory allegations which do not suffice to defeat summary judgment.  Accordingly, these defendants are entitled to summary judgment.

**D.**  **Swenson Cannot Demonstrate a Cognizable Cruel and Unusual Punishment Claim Against Peterson and Her Motion to Amend (Dkt. 62) Would be Futile and Should Be Denied**

In her Complaint, Swenson makes allegations against an unnamed Sheriff's Department Deputy defendant (referred to as "Doe" in the complaint) for forcing her to endure cold weather conditions, including rain and snow, when she was transported from KMC back to the jail. Compl. ¶¶ 116-117. Swenson later identified this unnamed defendant as Deputy Jarred Peterson and moved to amend her complaint to include him as a named defendant. *See* Swenson's Mtn. for Leave to Amend Complaint (Dkt. 62). Swenson does not seek to bring additional claims in her proposed Second Amended Complaint (Dkt. 62-2). The County Defendants oppose this motion arguing that they would be prejudiced if Swenson is allowed to amend her complaint and that she has not shown good cause to justify such an amendment.

Even though Peterson was not a named defendant in the original complaint, the County Defendants did address the allegations against him as the unnamed Doe defendant in their motion for summary judgment. *See* Kootenai County's Mem. in Support of Mtn. for Summary Judgment (Dkt. 70-1), pp. 23-26. Accordingly, the Court will consider both Swenson's Motion to Amend and the County Defendant's Motion for Summary Judgment in regard to these allegations.

Swenson alleges both Fourth and Eighth Amendment violations against Peterson in the proposed second amended complaint. The Fourth Amendment, however, is not implicated in Swenson's allegations, as its protections extend to unreasonable searches and seizures. The nature of Swenson's allegations are more commonly considered those that might implicate Eighth Amendment protections, except for the fact (as previously described herein) that the

Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "*after* conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 393 & n. 6 (1989) (emphasis added).

Instead, a complaint such as Swenson proposes to raise against Peterson (as a pretrial detainee) is considered under the Fourteenth Amendment. *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir.) (*en banc*), *cert. denied*, 502 U.S. 1074 (1991); *Youngberg v. Romeo*, 457 U.S. 307, 314-15 (1982). Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, *Bell v. Wollfish*, 441 U.S. 520, 537 n. 16 (1979), the same standard applies in both circumstances. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (*citing Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010) (rejecting the contention that mentally ill pretrial detainees are entitled to greater protection under the Fourteenth Amendment). "We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard." *Clouthier,* 591 F.3d at 1241.

Accordingly, for Swenson to prove a cognizable claim against Peterson on the facts of this case, she must show that she was incarcerated "under conditions posing a substantial risk of serious harm," or that she was deprived of "the minimal civilized measure of life's necessities" including adequate food, clothing, shelter, sanitation, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) (internal citation omitted). She must also show that defendants were deliberately indifferent to her needs. Deliberate indifference exists when an official knows of

and disregards an unconstitutional condition or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference. *Id.* at 837.

The Supreme Court has held that the protections of the Eighth Amendment are only implicated by serious incidents causing "unnecessary and wanton infliction of pain," where such pain has been inflicted by law enforcement officials' "deliberate indifference to the inmates' health or safety." *Hope v. Pezler*, 536 U.S. 730, 736-37 (1992). "Courts must decide whether the facts are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." *McKune v. Lile*, 536 U.S. 24, 42 (2002).

The Court concludes that Swenson's claim against Peterson is a *de minimis* claim under a constitutional grading system. Such a conclusion is consistent with the reasoning of the court in *Rocha v. Zavaras*, 2011 WL 1158003 (D. Colo. 2011). In *Rocha*, an inmate alleged that his Eighth Amendment right was violated when he was required to "walk five days a week for several months under subzero weather and freezing winds in the early hours from [his] living unit to the facility's intake area, to be transported to work at the CSP kitchen without coat [sic] or warm hat." *Rocha v. Zavaras*, 2011 WL 1158003 at *11. The court stated the following:

> Here, Plaintiff is certainly wearing a shirt and pants (see docket # 35 at 15) and does not assert that he is subjected to cold temperatures for any longer than the time it takes to walk from his living unit to an intake area in the same facility. Moreover, Plaintiff describes no adverse result from the assumptively brief exposure to cold weather, other than the discomfort the Court can assume results from being temporarily cold. "The Eighth Amendment does not mandate comfortable prisons, and conditions imposed may be restrictive and even harsh." *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (internal quotations omitted). The Court concludes that Plaintiff's claim regarding his commute in cold weather does not state an objectively plausible Eighth Amendment violation.

*Id.*

Taking her allegations as true for these purposes, Swenson stood in cold weather without a coat, in short-sleeved jail clothing with only sandals on her feet for approximately five minutes, then walked through three inches of snow to the patrol car in sandals, one of which was broken, and she was put into the patrol car. She was uncomfortable and cold (and understandably so) during that period of time. Swenson's Aff (Dkt. 1-1), ¶¶ 349-353, Swenson's Proposed Second Amend. Compl. (Dkt 62-2) ¶¶ 7-11. Nonetheless, these allegations simply are of a *de minimis* nature under an Eighth Amendment analysis. There is no evidence that a request for warmer clothes or a blanket was made or denied, the duration of the incident was relatively short (five minutes outside, a walk to the patrol car) and although such circumstances no doubt were discomforting, there is no indication that Swenson's health was endangered. Simply put, the allegations do not arise to the level of a constitutional violation. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Indeed, Swenson's alleged deprivation was significantly shorter than in *Rocha*, where the plaintiff alleged he was forced to walk in subzero temperatures without a coat or warm hat for months. Furthermore, like in *Rocha*, Swenson alleges no adverse result from her brief exposure to cold weather, other than the usual discomforts of winter. Accordingly, the Court recommends denial of Swenson's motion to amend her complaint to name Jarred Peterson as a defendant – the Court finds the claims against him would fail as a matter of law. *See* Fed. R. Civ. P. 15(a).[15]

---

[15] Even if the Court found that Swenson satisfied the "good cause" requirement under Rule 16(b) for modifying a case management order deadline, the motion to amend still should be denied under Rule 15(a). Rule 15(a) instructs that courts should "freely give leave" to amend a pleading "when justice so requires," a court must consider the following factors in doing so: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *Hurn v. Ret. Fund Trust of Plumbing, Heating & Piping Indus. of S. California*, 648 F.2d 1252, 1254 (9th Cir. 1981). Here, the Court finds that the amendment would be futile because even when construing Swenson's allegations as true, they do not rise to a constitutional violation.

**E.      Swenson Cannot State a Claim of Deliberate Indifference to Medical Needs**

Swenson does not explicitly state a claim for deliberate indifference to medical needs but does make a statement about not receiving medication from jail staff and the County Defendants respond to this allegation in their motion.  *See* Compl. ¶ 35.   Accordingly, the Court will address whether Swenson has stated a claim for deliberate indifference to medical needs.

As discussed above, the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees, but the same standards are applied in both instances.  *Bell v. Wolfish*, 441 U.S. 520, 537, n. 16 (1979); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010). A prison official cannot be liable for deliberate indifference unless he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837(1994). In other words, a plaintiff must show that the official was "(a) subjectively aware of the serious medical need and (b) failed adequately to respond." *Conn v. City of Reno*, 591 F.3d 1081, 1096 (9th Cir.2010) (citing *Farmer*, 511 U.S. at 828).

The record Swenson draws upon shows that she was placed on a medical watch and observed every 15 minutes.  When she complained of chest pains at 1:30 a.m., she was evaluated by the jail's medical staff, the paramedics were called and she was taken to the Kootenai County Medical Center, where she was treated before returning to the jail.  The record also reflects that she received medication while she was incarcerated.  Deak Aff., Exs. B, C, D, E and F.  There is no persuasive evidence, even after considering all favorable inferences, that Swenson was

subjected to an excessive risk to her health, or that even if she was at risk that any of the

defendants failed to adequately respond.  Accordingly, to the extent that Swenson's argument or

pleadings could be read to include a claim for deliberate indifference to medical needs, that

claim should be dismissed.

## OTHER PENDING MOTIONS

**1.      Motion to Compel Swenson to Comply with Rules of Civil Procedure (Dkt. 52)**

The County Defendants have moved for an order requiring Swenson to comply with

applicable procedural rules, including serving the parties' attorneys, and not the parties

themselves.  When a "party is represented by an attorney, service . . . must be made on the

attorney . . ."  Fed. R. Civ. P. 5(b)(1).  All of the Defendants are represented by counsel in this

case, and accordingly Swenson is hereby directed to make service of any documents upon the

parties' attorneys, not the parties.

**2.      Defendants' Motion to Compel Discovery (Dkt. 59)**

The County Defendants have moved to compel Swenson to fully respond to their

discovery requests, in particular that she provide: (1) a signed and completed "Medical Provider

Form" providing the name, telephone number and address of each and every health care provider

that has treated Swenson since the time of, and prior to, the incident complained of in her

complaints; (2) a completed and signed medical records release form; and (3) her complete state

and federal income tax returns for the preceding six years.

### A.      Tax Returns

While tax returns are not protected by privilege under federal law, the Ninth

Circuit has found that a "public policy against unnecessary public disclosure [of tax returns]

arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). "Accordingly, the Court may only order the production of plaintiff's tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Aliotti v. The Vessel Sonora*, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003). The Court will allow discovery of Swenson's tax returns, but only for the tax years 2009, 2010, 2011, and 2012. Swenson is ordered to produce those returns to Defendants' counsel. Defendants are ordered not to make copies of said documents, other than as may be needed for court filings in this case, and that any such filings be made under seal. The Court further orders that Defendants are not to disclose such records, or the contents thereof, to any persons other than the attorneys for the Defendants and any economic experts, if any hired by Defendants to respond to any claim for damages made by Swenson in this case. Swenson shall produce said documents no later than fourteen (14) days after the date of this Order.

### B.    Medical Records/Medical Release

The Court has dismissed the majority of the claims against the Defendants, with the only surviving claim being the one of excessive force against Lindblom. In light of this, the Court finds that as a general matter, the discovery requests are overly broad, particularly in light of the personal nature of medical records, except as to any medical records that reflect any treatment or diagnosis, or any request for treatment or diagnosis, in regard to any injury Swenson alleges that she suffered from the alleged conduct of Officer Lindblom in applying the handcuffs. Swenson shall produce said documents no later than fourteen (14) days after the date of this Order. If she does not do so, then Defendants may pursue alternative means of obtaining the same through

third-party discovery.

**3.      Swenson's Motion for Entry of Default (Dkt. 74)**

Swenson moves for default against "County of Kootenai" pursuant to Fed. R. Civ. P.

55(a) arguing that the defendant has not responded in the time allotted by the Federal Rules.  The

Court has previously addressed these same contentions made by Swenson.  *See* Report and

Recommendations (Dkts. 44, 85).  For the reasons discussed in those decisions, specifically that

Kootenai County timely filed a responsive pleading on February 12, 2013, this motion will be

denied.  *See* Report and Recommendation (Dkt. 44), p. 3.

**4.      Swenson's Motion to Compel (Dkt. 98)**

Swenson moves for an order compelling Adelson,[16] Wayman and Watson to respond to

her discovery requests.  Swenson claims Judges Wayman and Watson have failed to response to

any of her discovery requests or to provide any initial disclosures in violation of Fed. R. Civ. P.

26(a)(1)(A)(I), (ii).[17]  While Swenson does not include the discovery requests at issue, as

required under Dist. Idaho Loc. Civ. R. 37.2, she does state that the evidence she seeks from

Judge Watson may include "the court transcript . . . statutes, procedures, or Judge Bench Guides

he may use to support his position and alleged authority to imprison Plaintiff without due

process of law" and that if defendants have "a record that would show they faithfully followed

due process and all procedures to insure due process for the Plaintiff then a reasonable person

---

[16]  Adelson is not a party in this case but rather Wayman and Watson's attorney.

[17]  Including in Wayman and Watson's Motion to Dismiss was a request to stay discovery until their claims of immunity were addressed.  *See* Mtn. to Dismiss, p. 12.  A defense of immunity is often sufficient to stay discovery until the issue is resolved.  *See Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).  These defendants also point out that Swenson improperly served defendants themselves, rather than their attorney, in violation of Fed. R. Civ. P. 5(b)(1).

would expect that they would bring it forth . . ." Mtn. to Compel (Dkt. 98-1), pp. 5-6. This type

of evidence would not change the Court's analysis that Judges Wayman and Watson were acting

within their judicial capacities and are entitled to immunity. Accordingly, the motion is denied.

**5.      Swenson's Motion for Sanctions (Dkt. 104)**

Swenson moves for sanctions pursuant to Fed. R. Civ. P. 11(b) and 56(h) against

the law firm Paine Hamblen, attorney Peter C. Erbland, and Defendants Lindblom and Peterson.

Swenson contends that the affidavits of Erbland and Defendants Lindblom and Peterson are

made in bad faith, mislead the court, prejudice Swenson and mischaracterize her arguments and

statements.

**A.      The Legal Standard**

Federal Rule of Civil Procedure 11(b) describes the duty owed by counsel in this manner:

> By presenting to the court a pleading, written motion, or other
> paper - whether by signing, filing, submitting, or later advocating
> it - an attorney or unrepresented party certifies that to the best of
> the person's knowledge, information and belief, formed after an
> inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of
> litigation;
>
> (2) the claims, defenses and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support of, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence
> of, if specifically so identified, are reasonably based on belief or a
> lack of information.

The Rule 11 standard is objective and requires no bad faith or culpable state of mind. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-48 (1991); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc). As a general rule, the duty imposed by Rule 11 is met by confirming that "some evidence" supports the client's claims. *Brubaker v. Richmond Financial Holding Co.*, 943 F.2d 1363, 1377 (4th Cir. 1991); *Calif. Architectural Bldg. Prods. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing an award of sanctions where, although the evidence was weak and could not survive summary judgment, the court could not "say that the complaint [was] so lacking in plausibility as to . . . subject [the attorney] to sanctions" under Rule 11).

### 2.     The Appropriate Case for Imposition of Sanctions

Rule 11(c) describes the nature and mode of sanctions reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988). A filing is frivolous if it is "both baseless and made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d at 1362. Rule 11 sanctions are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust*, 859 F.2d at 1344.

Nothing in this case, nor in Swenson's argument in support of sanctions, persuades the Court that there has been conduct rising to the level of gravity that would violate Rule 11, and support the imposition of sanctions. The County Defendants' arguments in support of their motion for summary judgment are legally and factually supportable. Accordingly, their motion was not frivolous, legally unreasonable or brought for an improper purpose. Swenson's motion

for sanctions is denied.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1)      Defendant's Motion to Compel Plaintiff to Comply with Federal and Local Rules

        (Dkt. 52) is **GRANTED**;

2)      Plaintiff's Motion to Strike Impertinent, Immaterial, Scandalous Remarks, and

        Insufficient Defenses (Dkt. 53) is **DENIED**;

3)      Defendants' Motion to Compel Discovery (Dkt. 59) is **GRANTED IN PART**

        **and DENIED IN PART**;

4)      Plaintiff's Motion for Entry of Default (Dkt. 74) is **DENIED**;

5)      Plaintiff's Motion to Strike (Dkt. 90) is **DENIED, without prejudice**;

6)      Plaintiff's Motion to Compel (Dkt. 98) is **DENIED**; and

7)      Plaintiff's Motion for Sanctions (Dkt. 104) is **DENIED**.

## RECOMMENDATION

For the foregoing reasons and conditioned upon the submission of affidavits submitted in

corrected form as discussed herein, IT IS HEREBY RECOMMENDED that:

1)      Defendants Wayman and Watson's Motion to Dismiss (Dkt. 49) be **GRANTED**;

2)      Plaintiff's Motion to Amend Complaint (Dkt. 62) be **DENIED**; and

3)      Defendants Kootenai County, Kootenai County Sheriff's Office, Watson,

        Lindblom, McHugh, Reierson, Studor, Brooks, Austin and Brandel's Motion for

        Summary Judgment (Dkt. 70) be **GRANTED IN PART and DENIED IN**

        **PART**.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served a copy thereof.

**This fourteen (14) day period <u>will not</u> begin to run until the corrected affidavits are submitted as discussed _supra_.**

DATED: **February 14, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge